**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

RCVD - USDC - CHAS, SC
2026 SEP 24 AM11:07

MICHAEL D. CONNELLY,

Plaintiff,

v.

Civil Action No2:26-cv-4243-BHH-MHC

WELLCARE HEALTH PLANS, INC.,

a subsidiary of CENTENE CORPORATION,

Defendant.

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, COMPENSATORY, AND PUNITIVE RELIEF

### JURY TRIAL DEMANDED

### PRELIMINARY STATEMENT

1. Plaintiff Michael D. Connelly brings this action arising from Defendant Wellcare Health Plans, Inc.'s involuntary disenrollment of Plaintiff from the Wellcare Value Script Medicare Part D prescription drug plan for alleged nonpayment of a premium balance of less than $20.

2. This action concerns Wellcare's administration of Plaintiff's enrollment and premium-payment status, its collection and notice practices, its termination of coverage, its handling of Plaintiff's repeated requests for reinstatement, and its handling of written grievances and appeals.

3. Federal Medicare Part D regulations impose conditions on involuntary disenrollment for nonpayment of premiums, including reasonable collection efforts, notice, and a grace period of at least two whole calendar months. See 42 C.F.R. § 423.44(d)(1)(i)-(iii).

4. Under 42 C.F.R. § 423.44(d)(1)(iii), the grace period begins on the later of the first day of the month for which the premium is unpaid or the first day of the month following the date on which the plan requests payment.

5. Federal regulations also provide for reinstatement without interruption in coverage when the requirements for good-cause reinstatement are satisfied. See 42 C.F.R. § 423.44(d)(1)(vi).

6. For years before the disputed disenrollment, Plaintiff's Part D premiums were handled through Social Security Administration ('SSA') premium withholding.

7. Wellcare has stated that when Plaintiff's monthly premium became zero, the SSA withholding arrangement ceased.

8. When a positive premium resumed in 2026, Plaintiff alleges that Wellcare did not provide clear and adequate notice that the longstanding SSA payment mechanism was no longer operating and that he was required to establish a different payment method.

9. Wellcare thereafter terminated Plaintiff's Part D coverage over an alleged unpaid balance of less than $20.

10. Plaintiff promptly challenged the disenrollment, repeatedly offered to pay the amount due, and requested reinstatement.

11. Plaintiff submitted his first written grievance and reinstatement request dated May 11, 2026. A true and correct copy is attached as Exhibit A.

12. On June 2, 2026, Wellcare issued a written response titled 'We Have Resolved Your Grievance.' A true and correct copy is attached as Exhibit B.

13. On June 9, 2026, Plaintiff submitted a second written grievance and appeal, renewed his request for reinstatement, and enclosed a $60 check intended to cover the annual premium. A true and correct copy of that submission and available payment evidence is attached as Exhibit C.

14. Wellcare received and negotiated Plaintiff's $60 payment while continuing to treat him as disenrolled.

15. Under 42 C.F.R. § 423.564(e), a Part D sponsor generally must resolve a standard grievance no later than 30 calendar days after receipt, subject to a limited extension under specified circumstances, and must provide a written response to a written grievance.

16. Plaintiff did not receive a timely written response addressing his June 9, 2026 grievance and appeal.

17. On September 9, 2026, a Wellcare supervisor told Plaintiff that the matter was 'well overdue and months past the 30-day time limit.'

18. On September 10, 2026, Wellcare personnel advised Plaintiff that the matter had been denied and represented that an earlier determination had been issued.

19. On September 15, 2026, Plaintiff received what Wellcare presented as its final written response. That September 15 communication did not contain a new decision addressing the June 9 grievance. Instead, it merely furnished another copy of Wellcare's June 2, 2026 response to Plaintiff's first May grievance.

20. Accordingly, Plaintiff alleges that, as of September 15, 2026, Wellcare still had not issued a written response deciding the June 9, 2026 grievance and appeal or addressing the accompanying $60 premium tender. The September 15 communication is attached as Exhibit E.

21. Plaintiff also submitted a written complaint seeking assistance from Medicare/CMS. A true and correct copy is attached as Exhibit D.

22. Plaintiff alleges that the conduct described below reflects a continuing course of conduct rather than a single clerical error.

23. Plaintiff further alleges, upon information and belief, that the circumstances leading to his disenrollment may not have been unique to him. Discovery is expected to determine the number and circumstances of other Wellcare Medicare Part D beneficiaries who were involuntarily disenrolled after a change, cessation, or interruption in SSA premium withholding, including beneficiaries whose SSA withholding ceased while their premium was $0 and whose premium later became positive. Plaintiff seeks aggregate and de-identified information in the first instance and, if the identities of similarly situated beneficiaries later become relevant and discoverable, only through appropriate discovery procedures and any privacy protections ordered by the Court.

24. Plaintiff seeks declaratory and injunctive relief restoring continuous Part D coverage and correcting the disputed coverage gap, together with economic damages and any other compensatory or punitive relief available under surviving claims.

## JURISDICTION AND VENUE

25. This action concerns federal Medicare Part D requirements governing involuntary disenrollment, reinstatement, and grievance procedures, including 42 C.F.R. §§ 423.44 and 423.564.

26. Plaintiff presented his dispute to Wellcare and pursued the grievance and reinstatement procedures made available to him.

27. Plaintiff's May 11 written grievance and reinstatement request is attached as Exhibit A.

28. Wellcare's June 2 response to that first grievance is attached as Exhibit B.

29. Plaintiff's June 9 written grievance, appeal, and reinstatement request is attached as Exhibit C.

30. Plaintiff's written complaint to Medicare/CMS is attached as Exhibit D.

31. Wellcare's September 15 communication, which merely re-sent the June 2 response and did not decide the June 9 grievance, is attached as Exhibit E.

32. Plaintiff alleges that he has pursued and exhausted the administrative procedures Wellcare identified or made available concerning the disputed disenrollment and reinstatement request.

33. To the extent the requirements for judicial review under 42 U.S.C. § 405(g), as incorporated into the Medicare Act, are satisfied, Plaintiff invokes that jurisdiction.

34. Plaintiff also invokes 28 U.S.C. § 1331 to the extent any independently cognizable federal claim is not barred or exclusively channeled through the Medicare administrative-review scheme.

35. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any nonpreempted state-law claims forming part of the same case or controversy.

36. If the Court determines that an additional administrative step is required before adjudication of any claim, Plaintiff requests that the Court preserve the action and, where legally permissible, stay or remand the affected claim rather than dismiss it with prejudice.

37. Venue is proper in this District because Plaintiff resides in Charleston County, South Carolina, and the consequences of the challenged conduct were experienced in this District.

## PARTIES

38. Plaintiff Michael D. Connelly is a Medicare beneficiary residing in Johns Island, Charleston County, South Carolina.

39. Plaintiff was enrolled in the Wellcare Value Script Medicare Part D plan.

40. Defendant Wellcare Health Plans, Inc. is alleged to be a Medicare Part D sponsor and/or entity responsible for the administration, enrollment, premium collection, grievance handling, or related functions at issue in this action and is subject to applicable requirements of 42 C.F.R. Part 423.

41. Upon information and belief, Wellcare Health Plans, Inc. is a subsidiary of Centene Corporation.

## FACTUAL ALLEGATIONS

### A. Enrollment and SSA Premium Withholding

42. Plaintiff maintained Wellcare Medicare Part D coverage during 2023, 2024, and 2025.

43. During the relevant period, Plaintiff's premiums were historically collected through SSA premium withholding.

44. Plaintiff reasonably relied on that established payment method.

45. Wellcare later stated that SSA withholding ceased when Plaintiff's premium became zero.

46. Plaintiff did not request that SSA withholding be discontinued.

47. Plaintiff alleges that Wellcare did not clearly notify him that the SSA withholding arrangement had ended or that he would need to establish direct payment when a positive premium resumed.

48. In 2026, Plaintiff's monthly premium became positive again.

49. Plaintiff's premium was not automatically collected through SSA withholding.

### B. Billing, Notice, and Disenrollment

50. In or around December 2025, Wellcare sent Plaintiff a coupon booklet.

51. Plaintiff alleges that the coupon booklet did not clearly explain that the prior SSA withholding arrangement had ended or that failure to initiate a new payment method could result in disenrollment.

52. Wellcare has represented that it sent a delinquency notice dated approximately March 4, 2026.

53. Plaintiff acknowledges receiving one mailed communication concerning the premium issue.

54. Plaintiff did not receive repeated conventional bills or invoices clearly requesting an accumulated balance before disenrollment.

55. Plaintiff did not receive telephone or email outreach warning him that disenrollment was imminent.

56. Plaintiff was traveling during part of April 2026.

57. Wellcare terminated Plaintiff's Part D coverage effective approximately May 1, 2026.

### C. Federal Preconditions to Disenrollment

58. 42 C.F.R. § 423.44(d)(1)(i) requires reasonable efforts to collect unpaid premiums before involuntary disenrollment.

59. 42 C.F.R. § 423.44(d)(1)(ii) requires notice concerning disenrollment for failure to pay premiums.

60. 42 C.F.R. § 423.44(d)(1)(iii) requires a grace period of at least two whole calendar months.

61. The regulation provides that the grace period begins on the later of the first day of the month for which the premium is unpaid or the first day of the month following the date payment is requested.

62. Plaintiff alleges that Wellcare failed to satisfy one or more of these prerequisites before terminating his coverage.

63. Plaintiff seeks discovery concerning Wellcare's billing, mailing, collection, grace-period calculation, premium-withholding, and CMS transaction records.

**D. Premium-Withhold Status**

64. 42 C.F.R. § 423.44(d)(1)(v)(A) places restrictions on disenrollment in circumstances involving premium withholding.

65. Plaintiff historically paid through SSA premium withholding.

66. Plaintiff presently lacks access to Wellcare's and CMS's complete records establishing his precise premium-withhold status at the time of disenrollment.

67. Plaintiff alleges that Wellcare was required to determine whether the premium-withholding restrictions applied before effectuating disenrollment.

**E. Plaintiff's Immediate Challenge and First Written Grievance**

68. After learning that his coverage had been terminated, Plaintiff promptly contacted Wellcare.

69. Plaintiff offered to pay the outstanding amount.

70. Plaintiff also offered to pay the full year's premium.

71. Plaintiff was told that it was 'too late' to restore coverage.

72. Plaintiff reduced his challenge to writing in a grievance and reinstatement request dated May 11, 2026.

73. That submission described Plaintiff's payment history, reliance on SSA withholding, lack of awareness that the payment mechanism had changed, and willingness to cure any unpaid premium.

74. Plaintiff requested reinstatement.

75. Exhibit A is the May 11 written grievance and reinstatement request.

**F. Wellcare's June 2 Response to the First Grievance**

76. On June 2, 2026, Wellcare issued a written response titled 'We Have Resolved Your Grievance.'

77. Exhibit B is that June 2 response.

78. Plaintiff thereafter submitted a second written grievance and appeal on June 9, 2026 seeking further review and reinstatement.

**G. Good-Cause Reinstatement**

79. 42 C.F.R. § 423.44(d)(1)(vi) provides for reinstatement without interruption in coverage when the regulatory requirements for good cause are satisfied.

80. Plaintiff requested reinstatement within approximately 60 days of the disenrollment.

81. Plaintiff repeatedly offered to pay all premiums Wellcare contended were due.

82. Plaintiff alleges that his failure to pay resulted from reliance on the longstanding SSA withholding arrangement and inadequate notice that the mechanism had ceased.

83. Those circumstances warranted consideration under the good-cause reinstatement process.

84. Plaintiff alleges that Wellcare failed properly to consider or grant good-cause reinstatement.

### H. June 9 Grievance, Appeal, and $60 Premium Tender

85. On June 9, 2026, Plaintiff submitted a second written grievance and appeal.

86. The June 9 submission again described the SSA withholding history and requested reinstatement.

87. Plaintiff enclosed a $60 check intended to cover the annual premium.

88. Exhibit C contains the June 9 submission and available evidence of the premium tender.

89. Wellcare received the June 9 submission.

90. Wellcare negotiated Plaintiff's $60 check.

91. Wellcare nevertheless continued to treat Plaintiff as disenrolled.

### I. Failure to Resolve the June 9 Grievance Within the Regulatory Period

92. 42 C.F.R. § 423.564 requires a Part D sponsor to maintain meaningful grievance procedures.

93. A grievance is distinct from a coverage determination or appeal, and may be made orally or in writing as provided by the regulation.

94. Under 42 C.F.R. § 423.564(e)(1), a standard grievance generally must be decided no later than 30 calendar days after receipt.

95. The regulation permits a limited extension of up to 14 days under specified circumstances, accompanied by notice when required.

96. A written grievance is entitled to a written response.

97. Plaintiff received no timely written response deciding his June 9 grievance.

98. Plaintiff received no notice that Wellcare had invoked a permissible extension of the 30-day period.

99. Plaintiff received no written decision during any such extension period.

100. On September 9, 2026, a Wellcare supervisor stated that Plaintiff's matter was 'well overdue and months past the 30-day time limit.'

101. That statement is consistent with Plaintiff's allegation that the June 9 grievance remained unresolved.

102. 42 C.F.R. § 423.564(g) requires grievance records including the date of receipt, final disposition, and date the enrollee was notified.

103. Plaintiff seeks production of those grievance records.

### J. September 15, 2026 Communication Does Not Answer the June 9 Grievance

104. On September 10, 2026, Wellcare personnel advised Plaintiff that his matter had been denied and represented that an earlier written determination had been issued.

105. Plaintiff thereafter received a written communication from Wellcare on September 15, 2026.

106. Rather than providing a new determination addressing the June 9 grievance and appeal, the September 15 communication merely provided another copy of Wellcare's June 2 response to Plaintiff's first grievance.

107. The September 15 communication did not address the substance of the June 9 grievance, did not address the $60 annual-premium tender, and did not provide a written disposition of the June 9 grievance.

108. Exhibit E is the September 15 communication and the duplicate June 2 response furnished with it.

109. Plaintiff therefore alleges that Wellcare has never provided the written response required for his June 9 grievance.

110. Plaintiff seeks discovery of the complete grievance file, audit trail, creation and mailing records, and all records concerning any document Wellcare contends was a decision on the June 9 grievance.

**K. Payment and Refund**

111. Wellcare retained and negotiated Plaintiff's $60 payment while continuing to deny coverage.

112. In or around August 2026, Wellcare issued Plaintiff a $40 refund.

113. Plaintiff alleges that Wellcare retained the remaining portion of the payment while continuing to treat him as disenrolled.

114. Later Wellcare representatives appeared unaware of the payment and refund history.

**L. Continued Attempts to Obtain a Decision**

115. Plaintiff repeatedly contacted Wellcare between June and September 2026 seeking a decision and reinstatement.

116. Plaintiff expended more than 50 hours on telephone calls, correspondence, and related efforts.

117. On or about August 19, 2026, a Wellcare representative identified as Sherrie advised Plaintiff that he should receive follow-up within approximately 72 hours, but Plaintiff did not receive the promised response.

118. On September 9, 2026, Plaintiff again contacted Wellcare and spoke with representatives including a supervisor identified as Naya.

119. Naya stated that the matter was 'well overdue and months past the 30-day time limit' and indicated that further action would occur.

120. The following day, Wellcare personnel represented that the matter had already been denied.

121. The September 15 communication thereafter proved to be only a duplicate of the June 2 response to the first grievance, leaving the June 9 grievance unanswered.

**M. Medicare/CMS Complaint**

122. Plaintiff also sought assistance from Medicare/CMS concerning the disenrollment and grievance process.

123. Plaintiff submitted a written complaint concerning the matter.

124. Exhibit D is Plaintiff's written Medicare/CMS complaint.

125. Plaintiff was advised to continue pursuing the enrollment and grievance dispute with Wellcare.

126. Plaintiff thereafter continued his efforts with Wellcare.

### N. Similarly Situated Part D Beneficiaries

127. Plaintiff alleges, upon information and belief, that Wellcare's handling of SSA premium-withholding changes may have affected beneficiaries other than Plaintiff.

128. Plaintiff seeks discovery sufficient to determine how many Wellcare Part D beneficiaries were involuntarily disenrolled after an SSA premium-withholding or payment-status change, including beneficiaries whose SSA withholding ceased during a zero-premium period and who later became responsible for a positive premium.

129. Plaintiff also seeks discovery concerning how many such beneficiaries requested reinstatement, were reinstated or denied reinstatement, and had grievances or reinstatement requests remain unresolved beyond applicable deadlines.

130. Plaintiff does not presently seek public disclosure of other beneficiaries' private medical or identifying information. Aggregate or de-identified information should be produced in the first instance, subject to further lawful discovery and any protective order the Court deems appropriate.

### O. Damages and Consequences

131. During the disputed coverage period, Plaintiff was required to obtain prescription medications without the Part D coverage he expected to have.

132. Plaintiff has incurred substantial additional prescription-drug expenses, the precise amount of which will be established through documentation and proof.

133. Plaintiff has also incurred substantial inconvenience, anxiety, stress, and loss of time in attempting to correct the disputed disenrollment.

134. Plaintiff seeks recovery only to the extent such damages are legally available under claims that survive any jurisdictional or preemption defenses.

135. The disputed coverage gap is also capable of producing adverse enrollment consequences, including a potential late-enrollment penalty if not corrected.

136. Plaintiff seeks correction of the enrollment record so that an unlawful or improperly maintained gap does not create future adverse consequences.

## DOCUMENTARY EXHIBITS

137. Exhibit A — Plaintiff's first written grievance and reinstatement request, dated May 11, 2026.

138. Exhibit B — Wellcare's June 2, 2026 response titled 'We Have Resolved Your Grievance.'

139. Exhibit C — Plaintiff's June 9, 2026 second written grievance, appeal, reinstatement request, and available evidence of the $60 premium tender.

140. Exhibit D — Plaintiff's written complaint to Medicare/CMS.

141. Exhibit E — Wellcare's September 15, 2026 communication furnishing another copy of the June 2, 2026 response to the first grievance and not addressing the June 9 grievance.

142. Plaintiff incorporates Exhibits A through E into this Complaint to the extent permitted by Federal Rule of Civil Procedure 10(c).

## COUNT I

**Declaratory and Injunctive Relief — Improper Involuntary Disenrollment**

143. Plaintiff realleges the preceding paragraphs.

144. Plaintiff alleges that Wellcare failed to satisfy one or more requirements governing involuntary disenrollment, including reasonable collection efforts, adequate notice, the required grace period, applicable premium-withholding protections, and/or proper consideration of good-cause reinstatement.

145. Plaintiff seeks a declaration concerning whether the disenrollment complied with applicable Medicare Part D requirements.

146. If the disenrollment was unlawful or ineffective, Plaintiff seeks restoration of continuous Part D enrollment and correction of the corresponding enrollment record.

147. Plaintiff also seeks appropriate injunctive relief preventing the disputed gap from producing future adverse enrollment consequences.

**COUNT II**

**Failure Properly to Consider Good-Cause Reinstatement**

148. Plaintiff realleges the preceding paragraphs.

149. Exhibits A and C document Plaintiff's repeated efforts to obtain reinstatement and cure any premium deficiency.

150. Plaintiff alleges that his reliance on SSA premium withholding, the cessation of that mechanism, and the lack of clear notice warranted good-cause consideration.

151. Plaintiff timely sought reinstatement and repeatedly offered to pay the premium Wellcare contended was due.

152. Plaintiff alleges that Wellcare failed properly to consider and grant good-cause reinstatement under 42 C.F.R. § 423.44(d)(1)(vi).

153. Plaintiff seeks reinstatement without interruption in coverage to the extent permitted by law.

**COUNT III**

**Failure to Comply with Medicare Part D Grievance Requirements**

154. Plaintiff realleges the preceding paragraphs.

155. Plaintiff submitted the written June 9 grievance attached as Exhibit C.

156. Wellcare received the submission and negotiated the enclosed premium payment.

157. Under 42 C.F.R. § 423.564(e)(1), Wellcare was required to resolve a standard grievance within the applicable time period.

158. Plaintiff did not receive a timely written response to the June 9 grievance.

159. Plaintiff received no notice of a permissible extension.

160. On September 9, a Wellcare supervisor acknowledged that the matter was overdue.

161. The September 15 communication attached as Exhibit E did not cure that failure because it merely furnished another copy of the June 2 response to the first grievance and did not decide the June 9 grievance.

162. Plaintiff therefore seeks declaratory and other relief available by law concerning Wellcare's failure to comply with the applicable grievance requirements.

## COUNT IV

### Breach of Contract and Implied Covenant — Pleaded in the Alternative and to the Extent Not Preempted

163. Plaintiff realleges the preceding paragraphs.

164. Plaintiff's enrollment in the Plan created contractual obligations subject to applicable federal Medicare requirements.

165. Plaintiff performed or attempted in good faith to perform his premium-payment obligations.

166. Exhibits A and C document Plaintiff's efforts to cure any alleged deficiency and restore coverage.

167. Plaintiff alleges that Wellcare breached applicable contractual obligations and the implied covenant of good faith and fair dealing by terminating coverage and refusing reinstatement under the circumstances alleged.

168. Plaintiff seeks damages and other relief to the extent this claim is not preempted or otherwise barred.

## COUNT V

### Insurance Bad Faith — To the Extent Not Preempted

169. Plaintiff realleges the preceding paragraphs.

170. South Carolina recognizes a cause of action for an insurer's bad-faith or unreasonable refusal to pay benefits or otherwise honor obligations owed to an insured under circumstances recognized by law. See, e.g., Nichols v. State Farm Mut. Auto. Ins. Co., 279 S.C. 336, 306 S.E.2d 616 (1983).

171. Plaintiff alleges that Wellcare's cumulative conduct was unreasonable and in bad faith, including inadequate notice concerning the payment mechanism, disenrollment over a small premium balance, rejection of prompt cure efforts, failure properly to consider good cause, negotiation of the annual-premium payment while maintaining disenrollment, failure to issue a timely response to the June 9 grievance, prolonged unresolved handling, the September 9 acknowledgment that the matter was overdue, and the September 15 transmission of a duplicate June 2 response rather than a decision on the June 9 grievance.

172. Plaintiff seeks all damages legally recoverable on any surviving state-law bad-faith claim.

## PUNITIVE-DAMAGES ALLEGATIONS

173. Plaintiff realleges the preceding paragraphs.

174. To the extent a state-law claim survives and the evidence establishes willful, wanton, or reckless conduct sufficient under South Carolina law, Plaintiff seeks punitive damages.

175. Plaintiff alleges that the duration and cumulative nature of the conduct, including the failure to answer the June 9 grievance even after Wellcare acknowledged that the matter was overdue, may support such relief if proven.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that the Court:**

**A.** Declare the requirements applicable to Plaintiff's involuntary disenrollment under 42 C.F.R. § 423.44;

**B.** Determine whether Wellcare satisfied those requirements;

**C.** Declare the disenrollment unlawful or ineffective if Wellcare failed to satisfy the applicable requirements;

**D.** Order retroactive reinstatement and continuous Part D enrollment to the extent permitted by law;

**E.** Order correction of Plaintiff's enrollment records and any disputed coverage gap;

**F.** Declare, if supported by the evidence, that Wellcare failed to comply with 42 C.F.R. § 423.564 in responding to Plaintiff's June 9, 2026 written grievance;

**G.** Declare that the September 15, 2026 communication, which merely re-sent the June 2 response to the first grievance, did not constitute a written disposition of the June 9 grievance;

**H.** Order that any restored or corrected coverage period not result in a late-enrollment penalty or other adverse enrollment consequence;

**I.** Award Plaintiff recoverable economic damages, including additional prescription-drug expenses caused by the disputed loss of coverage;

**J.** Award consequential and non-economic damages to the extent legally recoverable under any surviving state-law claim;

**K.** Award punitive damages to the extent supported by proof and permitted by law;

**L.** Award recoverable costs;

**M.** If the Court concludes that an additional Medicare administrative procedure is required, stay or remand the affected claim where legally permissible rather than dismissing it with prejudice; and

**N.** Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

Michael D. Connelly

**Respectfully submitted,**

Michael D. Connelly, Pro Se
121 Blue Heron Pond Road
Johns Island, South Carolina 29455
mdcmercy@gmail.com
Date: 9/24, 2026